IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CHRISTINE T. G.,[1]

      **Plaintiff,**

  v.                                         **No. 1:24-cv-01157-JHR**

**FRANK BISIGNANO,**
*Commissioner of Social Security,*

      **Defendant.**

## MEMORANDUM OPINION AND ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION AND DENYING REMAND

THIS MATTER comes before the Court on Plaintiff's Opening Brief, [Doc. 13], in support of reversal of the Commissioner's final administrative decision and remand. The Commissioner filed a response [Doc. 16] and Plaintiff replied [Doc. 19]. Pursuant to 28 U.S.C. § 636(c) and Rule 73(b), the parties consented to Magistrate Judge Jerry H. Ritter presiding over Plaintiff's challenge to the Commissioner's final decision. The Court, having reviewed the briefing, the administrative record [Doc. 7] ("AR"), and applicable law, AFFIRMS the Commissioner's final decision and DENIES Plaintiff's request for remand.

## I.     PROCEDURAL BACKGROUND

Plaintiff completed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") on December 17, 2021. (AR 276, 283). The Social Security Administration found Plaintiff was not disabled both initially in March 2022 and upon reconsideration of her applications in October 2022. (AR 144, 155, 180, 206). Plaintiff requested review before an Administrative Law Judge ("ALJ"), and ALJ Karen Wiedemann held a telephonic hearing on October 2, 2023. (AR 35). The ALJ found that Plaintiff was not disabled

---

[1] Plaintiff's last name is abbreviated in the interest of privacy.

pursuant to the Social Security Act by written order issued March 25, 2024. (AR 48). Plaintiff requested review of the ALJ's decision by the Administration's Appeals Council who denied the request on September 13, 2024, making the ALJ's decision the final decision of the Commissioner. (AR 1). Plaintiff filed a complaint challenging the final decision with the Court pursuant to 42 U.S.C. § 405(g) on November 11, 2024. [Doc. 1].

## II.   <u>STANDARD OF REVIEW</u>

When a party appeals an adverse disability decision the court must affirm if the ALJ applied correct legal standards and supported her factual findings with "substantial evidence." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014)). Review calls for common sense by setting aside technicalities in favor of whether the court can follow the ALJ's reasoning and application of law. *Keys-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). Failure by the ALJ to follow legal standards under appropriate circumstances will warrant reversal "independent of the substantial evidence analysis." *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (quoting *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994)). At the same time, some errors do not warrant reversal if the ALJ's findings are sufficiently thorough and supported to render the error harmless. *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 734 (10th Cir. 2005).

Evidence is "substantial" when a reasonable mind would accept it as adequate support for the ALJ's conclusion—more than a scintilla but less than a preponderance of the record. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The court must examine the whole record to determine if the ALJ met the standard, including any evidence that may undercut or detract from her findings. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). But the court may neither "reweigh the evidence nor substitute its judgment for that of the Commissioner's." *Lax*, 489 F.3d

at 1084 (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). The reviewing court must affirm, even if it would resolve the matter differently, unless the record overwhelms the ALJ's factual findings or her decision rests on unsupported conclusions. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

### III.    THE COMMISSIONER'S FINAL DECISION

A claimant who seeks DIB or SSI under the Social Security Act must demonstrate that she cannot engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A five-step process guides whether the claimant satisfies that definition of disability. 20 C.F.R. § 404.1520(a)(4)(i)–(v).[2] 1 Those five steps address (1) whether the claimant is still engaged in substantial gainful activity; (2) whether the claimant is suffering from any impairments significantly limiting her ability to perform basic work activities; (3) whether those impairments meet or equal the criteria of a listed disabling impairment; (4) whether the claimant's residual functional capacity ("RFC") would preclude her ability to perform her past relevant work, and finally; (5) whether the claimant's age, education, experience, and residual functional capacity would enable her to perform a substantial gainful activity existing in significant numbers in the national economy. *Id.* In sum, a claimant qualifies for disability insurance if her medical impairments are per se disabling or otherwise prevent her from performing her past work and any other viable work options. *See* 20 C.F.R. § 404.1505(a).

**A.    Steps One, Two, Three.**

---

[2] Regulations for determining whether a claimant is disabled for both SSI and disability insurance benefits ("DIB") are identical but codified in two separate parts in the Code of Federal Regulations. Part 404 of Title 20 governs DIB while Part 416 governs SSI. The Court cites the applicable regulations in Part 416, but the analogous regulations in Part 404 apply as well.

At step one, the ALJ found Plaintiff's date of last insured was June 30, 2025, and that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of March 22, 2020. (AR 37–38). At step two, the ALJ determined Plaintiff suffered from the following severe impairments: type 2 diabetes mellitus, obesity, degenerative disc disease of the lumbar spine, hidradenitis suppurativa, peripheral neuropathy, depression, and post-traumatic stress disorder. (AR 38).

At step three, the ALJ found that none of Plaintiff's impairments, in isolation or in combination, met or medically equaled the severity of a listed disability. (AR 38). The ALJ also made findings on the severity of Plaintiff's mental impairments pursuant to the "paragraph B" criteria. *See* 20 C.F.R. § 404.1520a(c)(3). On a scale of none, mild, moderate, marked, and extreme, a claimant that has one extreme mental limitation or two marked mental limitations in four functional areas may satisfy a listed mental disability if other criteria are met. *Ricks v. Kijakazi*, No. 21-cv-00942, 2023 WL 2706569, at *5 (D.N.M. Mar. 30, 2023). In contrast, a moderate limitation means a claimant retains a "fair" ability to function in the area independently, appropriately, and effectively. *Id.* The ALJ found Plaintiff had moderate limitations in understanding, remembering, or applying information and concentrating, persisting, or maintaining pace, and mild limitations in interacting with others and adopting or managing oneself. (AR 40).

**B.    The ALJ's RFC Assessment.**

The physical exertion requirements for types of work are categorized as sedentary, light, medium, heavy, or very heavy work. 20 C.F.R. § 416.967. The ALJ concluded Plaintiff had an RFC for light work with the following limitations:

> [S]he can never climb ladders, ropes or scaffolds. The claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. The claimant must

avoid concentrated exposure to extreme cold and heat, poor ventilation, and pulmonary irritants, such as fumes, dust, odors, and gases. The claimant is able to sustain concentration, persistence, and pace for 3-4 step work functions, follow 3-4 step instructions and maintain a regular schedule. The claimant is able to adequately respond to supervision, coworkers, and the general public. The claimant is able to work in proximity to the general public, but her job should not include direct interaction with the general public. The claimant is able to adapt to workplace changes for routine normal work settings.

(AR 40–41). In explaining the RFC, the ALJ discussed evidence from Plaintiff's medication history, Adult Function Reports, treatment notes from medical providers, evaluations from consultative examiners, and a third-party Adult Function Report from the Plaintiff's mother. (AR 41–46). Relevant here, the record contained opinions from state agency psychologists Drs. Mark McGaughey and Joan Joynson, who documented their conclusions in Mental Residual Functional Capacity Assessments ("MRFCA"). (AR 141–43, 152–54, 175–77, 201–203). The ALJ found Joynson's opinion supported by the record and consistent with Petitioner's previous examinations. (AR 45). While she found McGaughey's opinion "generally consistent" with the record, the ALJ found the opinion less persuasive than Joynson's based on its use of "vague terms." (AR 45). Consultative examiner Dr. David LaCourt opined Plaintiff had more severe mental limitations: a moderate limitation in understanding and remembering detailed or complex instructions; moderate to marked limitation in sustaining concentration, task persistence, and carrying out instructions; a moderate limitation in attendance and concentration; a marked limitation in working without supervision, and a marked limitation in social interaction with the public, supervisors, and coworkers. (AR 775). The ALJ found the opinion unpersuasive for its inconsistency with examinations, including LaCourt's own examination, of Petitioner's behavior, social interactions, and judgment. (AR 45–46).

**C.    Steps Four and Five.**

5

At step four, the ALJ determined Plaintiff's RFC would preclude her past relevant work based on the testimony of a vocational expert. (AR 46–47). Proceeding to step five, the ALJ inquired with the vocational expert whether Plaintiff's RFC, age, education, and age would preclude her from any job existing in significant number in the national economy. (AR 47). The vocational expert testified that she could perform jobs such as file clerk, data entry clerk, and photocopy machine operator, which exist in significant numbers. (AR 47). Based on that testimony, the ALJ concluded Plaintiff's impairments did not preclude her from substantial gainful activity and found her not disabled pursuant to the Social Security Act. (AR 48).

## IV.    BRIEFING SUMMARY

Plaintiff argues the ALJ committed three reversible errors. [Doc. 13]. First, Plaintiff argues that the ALJ failed to reconcile the contradictions between section I and section III of McGaughey's and Joynson's MRFCA opinions. [Doc. 13, at 7–11]. Specifically, Plaintiff asserts that McGaughey and Joynson assessed impairments in staying on task, attendance, and accepting instruction and criticism from supervisors in section I that they did not include in their section III narrative explanations; therefore, the ALJ needed to address that conflict before adopting elements of their opinions into the RFC. *Id.* at 8–10. Second, Plaintiff argues that the ALJ ignored evidence in the record consistent with LaCourt's opinion. *Id.* at 12–13. Third, Plaintiff asserts the ALJ breached her duty to ensure an adequate factual record is developed by not seeking the treatment notes of Plaintiff's therapist, Shannon Burke, before issuing her decision. *Id.* at 14–15.

The Commissioner denies that the ALJ committed error. [Doc. 16]. First, the Commissioner argues Joynson adequately captured the section I conclusions of her MRFCA in her narrative assessments in section III by limiting Plaintiff to non-complex work. *Id.* at 12. The Commissioner further argues that the ALJ's finding of McGaughey's opinion less persuasive

makes any internal contradiction therein irrelevant. *Id.* at 13. Second, the Commissioner asserts that Plaintiff's argument on LaCourt's opinion represents an improper attempt to have the Court reweigh the evidence in the record. *Id.* at 13–15. Third, the Commissioner argues the ALJ did not violate her duty to develop the record because the Administration attempted multiple times to obtain Burke's notes and the record contained sufficient evidence of Plaintiff's psychological impairments. *Id.* at 17–20.

Plaintiff replies that the section III narratives did not adequately reflect the section I limitations because Joynson assessed a moderate limitation in attendance while writing Plaintiff could "maintain a regular schedule." [Doc. 19, at 3–5]. Furthermore, Plaintiff asserts the ALJ still needed to address McGaughey's section I limitations despite finding his opinion less persuasive. *Id.* Additionally, Plaintiff argues she does not ask the Court to fact-find as the error was the ALJ's failure to sufficiently address probative evidence. *Id.* at 5–6. Finally, Plaintiff argues that the Administration's greater expertise and power required it to make additional efforts to obtain Burke's treatment notes, especially in light of Plaintiff's pro se status. *Id.* at 6–7.

## V.    ANALYSIS

The Court finds the ALJ applied the correct legal standards to her analysis and supported her conclusions with substantial evidence. First, Joynson's MRFCA did not contain internal contradictions, and any contradictions in McGaughey's MRFCA does not render the decision reversible because the ALJ did not rely on it. Second, the ALJ adequately discussed evidence consistent with LaCourt's opinion and based her rejection of the opinion on substantial evidence. Third, the ALJ discharged her duty to develop an adequate factual record based on the Administration's repeated attempts to obtain Burke's treatment notes, the evidence of Plaintiff's depression already in the record, and the uncertainty about what the notes contained.

**A.      Joynson's MRFCA Opinions Did Not Have Internal Contradictions, and the ALJ Did Not Rely on McGaughey's Opinion.**

1.      *Applicable law for MRFCAs.*

MRFCAs document a claimant's workplace-related mental limitations assessed by a medical consultant. *Lee v. Colvin*, 631 F. App'x 538, 541 (10th Cir. 2015). In section I of the MRFCA, the consultant records their summary conclusions about the types of limitations a claimant has. *Carver v. Colvin*, 600 F. App'x 616, 618–19 (10th Cir. 2015). In section III, the consultant provides a detailed explanation of the limitations assessed. *Id.* Both section I and III are part of the consultant's findings, but only section III contains the opinions the ALJ must address for her RFC assessment. *Silva v. Colvin*, 203 F. Supp. 3d 1153, 1159 (D.N.M. 2016); *Nelson v. Colvin*, 655 F. App'x 626, 628–29 (10th Cir. 2016). Consequently, an ALJ need not address section I of a consultant's MRFCA so long as there are no clear, inexplicable contradictions between section I and the section III narrative. *Carver*, 600 F. App'x at 619.

2.      *Joynson's MRFCA did not have internal contradictions, and any internal contradiction in McGaughey's MRFCA does not make the ALJ's decision reversible.*

The Court finds Joynson's MRFCA opinion did not have contradictions between section I and section III. The MRFCA includes a grouping of "concentration and persistence" limitations in section I. *See* (AR 175). In that grouping, Joynson listed "moderate" limitations in (1) carrying out detailed instructions; (2) maintaining attention and concentration for extended periods; (3) maintaining a schedule, regular attendance, and punctuality "within customary tolerances"; and (4) completing a normal workday and week without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods. (AR 176–77). In her section III narrative, Joynson wrote that Plaintiff could sustain her "cpp," or concentration, persistence, and pace, for "3-4 step work functions, follow 3-4 step

instructions and maintain a regular schedule." (AR 177). Plaintiff argues this narrative fails to reflect the section I moderate limitations in maintaining attention and concentration for extended periods, maintaining a schedule and regular attendance, completing a normal workday and workweek, and performing at a consistent pace. [Doc. 13, at 9–10]. However, these moderate limitations are adequately incorporated in section III. The Court reads Joynson's narrative not to state Plaintiff can maintain a schedule for any work, but that she can maintain her concentration, persistence, pace, and work schedule when her work consists of simple, 3–4 step instructions and tasks. *See Nelson*, 655 F. App'x at 629 (limitation on complexity of work can account for concentration limitation); *see also Vigil*, 805 F.3d at 1203–04 (limitations in concentration, persistence, or pace can be accounted for by complexity of work required). Thus, Joynson's section III narrative addresses the moderate limitations she assessed in each of area of concentration and persistence in section I.

For McGaughey, Plaintiff argues section I of his MRFCA lists a moderate limitation in accepting criticism and instruction from supervisors which contradictions his section III that she can "adequately" interact with co-workers and supervisors. [Doc. 13, at 10]. Assuming without deciding that Plaintiff cannot have a moderate limitation in accepting criticism and instruction from a supervisor and also interact "adequately" with them, the contradiction would not warrant reversal. The ALJ did not rely on McGaughey's narrative; instead, the ALJ expressly found McGaughey's MRFCA less persuasive for vagueness about the limitations he assessed. (AR 45). Plaintiff argues the ALJ was nevertheless obligated to address section I and section III in McGaughey's MRFCA directly. [Doc. 19, at 4]. In other words, Plaintiff requests the Court reverse the ALJ for lack of sufficient criticism of a medical opinion upon which she did not rely. *See Tamara M. S. v. Bisignano*, No. 24-cv-01184, 2026 WL 483319, at *5 (D.N.M. Feb. 20, 2026).

9

Reversal on that ground would prioritize technicality over substance. *See Keys-Zachary*, 695 F.3d at 1166.

**B.      The ALJ's Assessment of LaCourt's Opinion Was Based on Substantial Evidence.**

       *1.      Applicable law for weighing medical opinions.*

The ALJ must review all proffered medical opinions on a claimant's limitations as part of the whole record and explain how they impacted his RFC assessment. *Vigil*, 805 F.3d at 1201–02. Factors for review include the doctor's examining and treatment relationship with the claimant, the support for the opinion, its consistency with the record as a whole, the specialization of the doctor, and any other important consideration. 20 C.F.R. § 404.1527(c); 20 C.F.R. § 404.1520c(c). The most critical factors are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). The ALJ need not discuss each factor so long as she addresses supportability and consistency and adequately supports the weight that she assigns an opinion. *Id.*; *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). However, the ALJ may not, without explanation, downplay, mischaracterize, or cherry-pick elements from a medical opinion to support her RFC determination, or otherwise fail to discuss uncontroverted or significantly probative evidence. *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996); *Bryant v. Comm'r, SSA*, 753 F. App'x 637, 641 (10th Cir. 2018).

      *2.      The ALJ followed applicable standards in weighing LaCourt's opinion and based her analysis on substantial evidence.*

The ALJ found LaCourt's opinions that Plaintiff suffered from more serious limitations unpersuasive based on its inconsistency with examinations where Plaintiff presented "good insight and judgment and was generally cooperative." (AR 46). The ALJ also found the opinion unsupported by LaCourt's own examinations showing the same. (AR 45). Plaintiff does not dispute that the ALJ addressed the supportability and consistency of LaCourt's opinions; instead, Plaintiff argues the ALJ ignored record evidence that was consistent with LaCourt's conclusions. [Doc. 13,

at 12–13]. As support, Plaintiff cites her arguments about Joynson's and McGaughey's MRFCAs; Plaintiff's weeping, aversion to eye contact, and standoffishness at some of her examinations; her refusal to take psychiatric medications; and "falling out" with her counselor over her diabetes. *Id.* at 13. The Court is not persuaded. First, the Court addressed above that Joynson's MRFCA was not contradictory and McGaughey's MRFCA was not relied on. Second, the ALJ did address Plaintiff's tearful and depressive episodes, as well as her refusal to take medications despite her treatment providers' advice. (AR 40, 43). However, the ALJ found this evidence less persuasive than the examinations where Plaintiff demonstrated typical judgment, behavior, and self-regulation. (AR 43, 45). She further noted how LaCourt himself did not observe issues with eye contact, behavior, recall, attention, or sociability. (AR 45, 774). An ALJ's conclusion does not lack substantial evidence because a different one might be drawn from the record. *Lax*, 489 F.3d at 1084. As the ALJ offered valid reasons for why she found the evidence supportive of LaCourt's opinion less persuasive, the Court cannot substitute its own judgment otherwise. *Id.*

**C.      The ALJ Did Not Violate Her Duty to Develop the Record.**

      *1.      <u>An ALJ's duty to develop the record.</u>*

As disability determinations are not adversarial proceedings, an ALJ has a duty to ensure she has all relevant facts and evidence necessary to make an informed decision. *Henrie v. U.S. Dep't of Health & Hum. Servs.*, 13 F.3d 359, 360–61 (10th Cir. 1993). When a claimant is unrepresented, the ALJ's duty heightens. *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006). The ALJ's duty may include obtaining probative medical records which come to her attention or ordering a consultative exam when the record has either too little or too conflicting evidence on a material issue. *Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1996); *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997).

Factual development, however, does not equate to a duty to advocate on behalf of the claimant. *Madrid*, 447 F.3d at 790. Thus, the claimant continues to bear the burden to raise the "substantial" issues upon which she seeks a disability finding. *Wall v. Astrue*, 561 F.3d 1048, 1063 (10th Cir. 2009). Generally, whether the ALJ has fulfilled her duty will depend on the number and extent of the Administration's efforts to obtain the evidence, the ability of the claimant to obtain the evidence herself, and the impact the evidence might have had on the ALJ's decision. *Carter*, 73 F.3d at 1022; *Madrid*, 447 F.3d at 791; *Baker v. Bowen*, 886 F.2d 289, 291–92 (10th Cir. 1989); *Villalobos v. Colvin*, 544 F. App'x 793, 795 (10th Cir. 2013).

> 2. *The ALJ did not violate her duty to develop the record.*

The Court finds the ALJ did not violate her duty to develop the record by issuing her decision without Burke's treatment notes. As the Commissioner points out, the Administration attempted to obtain Burke's treatment notes from Plaintiff before the ALJ's hearing. (AR 361). The Administration's case development worksheet reflects that Plaintiff sent a billing list, and when the Administration inquired again about receiving Burke's notes, Plaintiff reported she was in the process of getting them. (AR 361). At the hearing, the ALJ asked Plaintiff whether she had reviewed all exhibits in her file and whether she believed additional exhibits were needed. (AR 67–68). Plaintiff did not raise the issue of Burke's notes. (AR 68). Thus, the Administration and the ALJ made repeated attempts to ensure they had a sufficient record.

Plaintiffs argue these efforts fall short because of her pro se status, the Administration's subpoena power, and Burke's role as a treating provider. [Doc. 13, at 15]; [Doc. 19, at 7]. The Court is not persuaded. This is not a case where the Administration failed to use its subpoena power for records Plaintiff could not obtain. *Cf. Baker*, 886 F.2d at 291–92. While Plaintiff asserts her pro se status and mental impairments made it difficult for her to retrieve the notes herself, she

knew about their existence, had no legal obstacle to receiving them, and did not tell the ALJ their absence would be detrimental. (AR 67–69, 361). Furthermore, the ALJ did not assess Plaintiff's psychological symptoms and impairments on a dearth of evidence. *See Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008) (duty to develop record not implicated where record already sufficient). The ALJ relied on the observations and opinions of several consultative examiners, Plaintiff's diagnosis and treatment history, and Plaintiff's reports on the impact her symptoms had on her daily activities. (AR 41–46); *see Valdez v. Kijakazi*, No. 22-cv-00576, 2023 WL 5275457, at *5–6 (D.N.M. Aug. 16, 2023). And the ALJ never found Plaintiff's depression and post-traumatic stress disorder to be non-severe impairments. *See Perez v. Colvin*, No. 15-cv-00076, 2016 WL 8230704, at *7 (D.N.M. July 25, 2016). Although Plaintiff argues the notes of a treating psychotherapist could have offered more insight into her depression, anxiety, and post-traumatic stress disorder, she does not address what topics she may have discussed with Burke during their sessions. [Doc. 13, at 15]. In addition, Plaintiff testified at her hearing that she did not agree with Burke's medical opinions and ceased treatment with her as a result. (AR 81). Therefore, Plaintiff can only speculate about the notes' contents and the impact of any conclusions Burke might have made.

## VI.    CONCLUSION

In sum, for the reasons above the Court AFFIRMS the Commissioner's final decision and DENIES Plaintiff's request for remand. [Docs. 1, 13].

_____
HON. JERRY H. RITTER
United States Magistrate Judge

13